IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEMETRIUS ARMOUR,** | |
| Plaintiff, | |
| v. | Case No. 23-cv-3072-NJR |
| **AMANDA CHOATE, ANGELA WALTER, ANTHONY WILLS, MELISSA OGLE, and WEXFORD HEALTH SOURCES, INC.,** | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Demetrius Armour, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Armour's First Amended Complaint alleged Eighth Amendment and state law claims for Defendants' alleged failure to schedule or provide him treatment for flu-like symptoms (Doc. 14).

This matter is currently before the Court on a motion for summary judgment filed by Defendants Amanda Choate and Wexford Health Sources Inc. (Docs. 38, 39). Defendants argue that Armour failed to exhaust his administrative remedies prior to filing his lawsuit. Armour filed a response (Doc. 53) in opposition to the motion. Defendants Choate and Wexford filed a reply brief (Doc. 54).

Similarly, Defendants Angela Walter, Anthony Wills, and Melissa Ogle filed a motion for summary judgment, arguing that Armour failed to exhaust his administrative

1

remedies (Doc. 42).[1] Armour filed a response (Doc. 44), and Defendants filed a reply brief (Doc. 49). Armour subsequently filed a supplemental statement of disputed facts (Doc. 50) and an additional reply brief (Doc. 51). Defendants Walter, Wills, and Ogle filed a motion to strike the additional briefs (Doc. 52).

## BACKGROUND

On September 12, 2023, Armour filed his Complaint alleging deliberate indifference to his flu-like symptoms (Doc. 1). His Complaint was dismissed for failure to state a claim, but he was granted leave to file an amended pleading (Doc. 13). On February 2, 2024, Armour filed his First Amended Complaint (Doc. 14). He alleged that on October 29, 2022, he developed flu-like symptoms (Doc. 15, p. 2). This was during the Covid-19 pandemic, and the next day he submitted a sick call slip to the healthcare unit (*Id.*). He subsequently submitted two more sick call request slips over the next two days, but never received a response to the requests (*Id.*). Armour also verbally requested medical care from Amanda Choate, Angela Walter, and Melissa Olge (*Id.*). He spoke to each official during their daily rounds, but they merely instructed him to submit a sick call request slip (*Id.*). Although he explained that he already submitted multiple requests to no avail, they simply walked away (*Id.*). He alleged that the refusal to respond to his

---

[1] Anthony Wills was added to the case in his official capacity only for the purpose of responding to discovery aimed at identifying the unknown defendants. Because all defendants have now been identified by their proper names, Wills is no longer a necessary party. He is **DISMISSED** as a defendant in this case.

sick call request slips was due to an unwritten policy of Wexford Health Sources, Inc. intended to cut costs and allow for an easy workday of its employees (*Id*. at p. 3).

After review of his First Amended Complaint pursuant to 28 U.S.C. § 1915A, Armour was allowed to proceed on the following counts:

> Count 1:   Eighth Amendment deliberate indifference claim against Amanda Choate, Angela Walter, and Melissa Olge for failing to schedule or provide treatment to Armour for his flu-like symptoms.
>
> Count 2:   Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for having a policy of refusing sick call request slips from inmates in order to cut costs.
>
> Count 3:   Illinois state law negligence claim against Amanda Choate, Angela Walter, and Melissa Olge for failing to schedule or provide treatment to Armour for his flu-like symptoms.

(Doc. 15, p. 3).

Armour filed three grievances regarding his medical care. Grievance Officer Kelly Pierce stated in an affidavit that Menard's grievance logs show two grievances filed by Armour related to his claims.

> **November 7, 2022 Grievance (#89-11-22):** Armour's November 7, 2022 grievance was received by the counselor on November 9, 2022 (Doc. 42-2, pp. 7, 11). Armour complained that on October 30, 2022 he developed a severe headache, sweating, loss of appetite and concentration, and muscle aches (*Id*. at p. 44). He submitted sick call request slips on several dates with no success (*Id*.). He also noted that he spoke with several medical personnel that walked by his cell including female staff named Weaver, Amanda, Wills, and Melissa (*Id*. at p. 45). He also described the individuals as he did not know their exact names (*Id*.).
> On November 9, 2022, the grievance was marked as received (Doc. 42-2, pp. 7, 44). Armour's Cumulative Counseling Summary indicates that the grievance was forwarded to clinical services for a response (*Id*. at p. 11). On December 18, 2022, Armour submitted a handwritten note asking for the status of his grievance (Doc. 53, p. 23). A

3

handwritten response stated that grievances regarding medical treatment get sent to medical for review and take time to receive a response (*Id.*). On January 9, 2023, Armour sent a second request regarding the status of his grievance (*Id.* at p. 24). On January 10, 2023, the counselor reviewed the kite from Armour requesting the status of his grievance (Doc. 42-2, p. 10). The counselor again noted that she was waiting on a response from the healthcare unit (*Id.* at p. 10; Doc. 53, p. 24).

On June 15, 2023, Connie Dolce, a Registered Nurse ("RN") in the healthcare unit, responded to the counselor regarding Armour's grievance (Doc. 42-2, p. 46). She noted that the only request for care received by the healthcare unit was dated October 20 and requested nail clippers (*Id.*). She also noted that he was scheduled for a nurse sick call on October 21 but refused the visit (*Id.*). On June 26, 2023, the counselor noted that Dolce had responded to the grievance (*Id.* at pp. 9, 47). Armour received the response to the grievance (Doc. 1, p. 24). The grievance log does not note a receipt by the grievance office for this grievance (Doc. 42-2, p. 7).

**February 22, 2023 Grievance (#320-2-23):** On February 22, 2023, Armour submitted a grievance to his counselor. This grievance was identical to the November 7 grievance (Doc. 42-2, p. 48). On February 23, 2023, the grievance was marked as received by the prison and forwarded to clinical services for a response (*Id.* at pp. 9, 48).

On June 15, 2023, Connie Dolce submitted a response to the grievance, noting that the claims were identical to Armour's November 7 grievance and had been addressed in response to that grievance (*Id.* at p. 50). On June 26, 2023, the counselor documented the response and returned the grievance (*Id.* at pp. 9, 52). Armour received a response to the grievance (Doc. 1, p. 23). The grievance log, however, does not note receipt of the grievance by the grievance officer.

On June 4, 2023, the Administrative Review Board ("ARB") received a grievance dated June 4, 2023 that is also marked as Grievance #320-2-23 (Doc. 42-1, p. 7). The grievance is identical to Armour's two grievances submitted to his counselor. On June 9, 2023 the ARB documented receipt of the grievance (*Id.*). The grievance was returned because it was not submitted in the proper timeframe (*Id.* at p. 6). A letter from Armour accompanying the grievance indicates that he submitted his grievance on February 22, 2023 to the grievance officer and requested a status from the grievance officer on May 23, 2023 but received no response (*Id.* at p. 9).

In their motions for summary judgment, both sets of Defendants argue that Armour failed to exhaust his administrative remedies because he failed to pursue his

4

grievances through the entire grievance process before filing his Complaint. Although Armour received responses from his counselor on both grievances, he failed to appeal the grievances to the grievance officer and then the ARB. Defendants acknowledge that there were delays in receiving a response to both grievances, but Defendants argue that Armour received the grievances back from the counselor prior to filing his lawsuit and had an obligation to pursue the grievances through the rest of the process. They argue that the grievance process was still available to Armour but he failed to pursue it.

In response, Armour alleges that he did everything he could to exhaust his grievances. He argues that on February 22, 2023, he submitted a duplicate grievance with a letter indicating that he did not have a counselor response and submitted the grievance to the grievance officer (Doc. 53, p. 27). He never received a response and then submitted a duplicate grievance to the ARB on June 4, 2023, which was returned as untimely (*Id*. at p. 28). He argues that he completed the proper procedure in accordance with directions from the Uptown People's Law Center (Doc. 53, p. 34). Those directions state that if a prisoner does not receive a response at any stage, he should move to the next stage in the process and include a note as to why the prior stage was not fully completed (*Id*.). Armour argues that this guidance is consistent with a note in IDOC's Administrative Directive 04.01.114(II)(G)(6)(c), which states that if an offender does not receive a response to a grievance within the allotted time for a reply, it should be considered a denial at that level (Doc. 53, p. 41). Armour argues that he filed his grievance at all three levels of the process and did not have to restart the grievance procedure when he finally received a response from his counselor in June 2023.

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge.

Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Armour was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the

7

      names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the [CAO] within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

      If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the

8

appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

DISCUSSION

**A. Motion to Strike**

After Defendants Angela Walter and Melissa Ogle filed a reply brief (Doc. 49) arguing, in part, that Armour failed to comply with Federal Rule of Civil Procedure 56 and SDIL Local Rule 56.1 by failing to properly respond to their statement of facts, Armour filed both a supplemental statement of disputed facts (Doc. 50) and a reply (Doc. 51) to Defendants' reply brief. Defendants then filed their motion to strike (Doc. 52)

9

arguing that Armour's responses are sur-replies and should be stricken. SDIL Local Rule 7.1(a)(4) on motion practice strictly forbids sur-replies. Armour's filings are clearly sur-replies to the reply brief and are inappropriate. Thus, the motion to strike (Doc. 52) is **GRANTED**, and Armour's supplement (Doc. 50) and sur-reply (Doc. 51) are **STRICKEN**.

But to the extent that Defendants ask that their numbered facts be deemed admitted due to Armour's failure to properly respond to the facts, their request is **DENIED**. SDIL Local Rule 56.1(b) requires that briefs in opposition to a summary judgment motion contain a response to the statement of facts. "The response shall contain corresponding paragraphs to the Statement of Material Facts that state whether the fact is: (1) admitted; (2) disputed; (3) admitted in part and disputed in part (specifying which part is admitted and which part is disputed); or (4) not supported by the record citation." SDIL Local Rule 56.1(b). Facts that are not specifically disputed are deemed admitted. SDIL Local Rule 56.1(g). Armour is proceeding *pro se* and clearly filed his response to the best of his abilities. He filed a response to Defendants' material facts, indicating whether he agreed or disagreed, and explaining his factual disagreements (Doc. 44, pp. 6-11). Thus, to the extent that Defendants seek to have their facts deemed admitted and decline to admit Armour's additional facts, their request is **DENIED**.

## B. Exhaustion of Administrative Remedies

The parties do not dispute that Armour did not further pursue his November 7, 2022 and February 23, 2023 grievances after receiving them back from the counselor in June 2023. Instead, the parties dispute whether Armour had to pursue the grievance process further. Armour argues that he did not have to pursue his grievances because he

10

had already sought to submit the grievance to both the grievance officer and the ARB after not receiving a timely response from the counselor. He also argues that the ARB deemed the grievance untimely, thus making the process unavailable. Defendants argue, however, that Armour had to wait for a response from the counselor and when he received that response, he had to pursue it through the grievance process.

Armour submitted his grievance to the counselor and then, initially, waited for a response. He subsequently filed two requests for a status and the counselor responded that she was still waiting for a response from the healthcare unit. But instead of waiting for a response as directed by the counselor, he subsequently filed his February 22, 2023 grievance.[2] He then submitted another copy of the grievance, labeled with the grievance number for the February 22 grievance, to the ARB in June 2023.

Armour did experience delays in the grievance process. The counselor took 229 days to respond to the November 7, 2023 grievance and 123 days to respond to the February 23, 2024 grievance (Doc. 42-2, pp. 6-7). But "processing delays do not relieve a prisoner of the obligation to exhaust." *Matthews v. Pitzen*, Case No. 24-1358, 2024 WL 4850498, at *2 (citing *Ross v. Blake*, 578 U.S. 632, 638-39 (2016)). And the grievance procedures do not provide a deadline for the counselor to respond to the grievance.[3] Some grievances may take longer to process. *See Ford. Johnson*, 362 F.3d 395, 400 (7th Cir.

---

[2] Although Armour maintains that this grievance was submitted to the grievance officer with a note, the grievance was actually submitted to the counselor and received a new grievance number (Doc. 42-2, pp. 6, 9, 48).
[3] The procedures require the grievance officer to respond to the grievance within two months of receipt of the grievance, but the procedures for submitting the grievance to the counselor has no such timeline. *See* 20 Ill. Admin. Code §§ 504.810 and 504.830(e).

2004). While there is a point at which a failure to respond can make the grievance process unavailable, the delays in Armour's case do not meet that point. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)) ("An administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance and, in so doing, prevents the prisoner from exhausting administrative remedies."). Here, Armour was made aware of the delays and knew that his grievance was still being processed. He was told as much on two occasions. The grievance process was not unavailable, nor had the prison simply failed to respond. *See Ford*, 362 F.3d at 400 (although the response from the ARB was after the aspirational decision deadline, the inmate knew the ARB was still processing his grievance). *Compare with Reid*, 962 F.3d at 331 (noting that unlike the inmate in *Ford*, the inmate in this case failed to receive notice that his grievance was being investigated). The process just took longer than Armour expected. Armour could have again inquired about the status of his grievance, but instead proceeded to submit a second grievance and then submit a grievance to the ARB. Thus, he failed to follow the proper grievance procedure that was available to him.

Armour maintains that he was allowed to pursue his grievance to the next stage due to the delays in the process. But he cites to a notice from the Uptown People's Law Firm, a notice that is not reflective of IDOC's grievance procedure. Further, the Administrative Code, as well as the Administrative Directive that Armour cites to, do not contain a deadline for a response from the counselor (Doc. 53, pp. 36-42). And, as previously stated, Armour was aware of the delays and knew that the counselor was still

looking into his grievance. Nothing in the record indicates that Armour could proceed to the next level.

Further, Armour received a response prior to filing his lawsuit. He received a response to his November 7, 2022 grievance from the counselor on June 26, 2024, or shortly thereafter. He also received a response to his February 22, 2023 grievance from his counselor, noting that the grievance was duplicative of his earlier grievance and his medical concerns were addressed in the prior grievance (Doc. 42-2, p. 52). Thus, at the time Armour received his response, he was in possession of a counselor response of his original grievance, and notice that his February 22, 2023 was not reviewed by the grievance officer but treated as a new grievance. At that point, Armour could have submitted his grievances to the grievance officer for review. Although Armour argues that the ARB had already denied the grievance as untimely, that grievance was labeled with the same number as the February 22 grievance (#320-2-23). The ARB never reviewed or rejected the November 7 grievance (#89-11-22). Thus, the grievance process remained capable of use. Further, Armour had plenty of time to pursue his grievance through the rest of the process. He did not even attempt to do so, despite waiting an additional three months to file his Complaint. Armour simply failed to proceed any further. As such, he failed to properly exhaust his administrative remedies and his claims in Counts 1 and 2 are **DISMISSED without prejudice**.

   C. **State Law Claim**

As to his remaining state law claim in Count 3, "the general rule in this circuit that when 'the federal claim drops out before trial, … the federal district court should

13

relinquish jurisdiction over the supplemental claim.'" *Golden Years Homestead, Inc. v. Buckland,* 557 F.3d 457, 462 (7th Cir.2009). *See also Redwood v. Dobson*, 476 F.3d 462, 467 (7th Cir. 2007). Because the Eighth Amendment claims are now dismissed for failure to exhaust his administrative remedies, the Court relinquishes supplemental jurisdiction over the remaining state law claim. *See* 28 U.S.C. § 1367(c)(3). Thus, Count 3 is also **DISMISSED without prejudice**.

## Conclusion

For the reasons stated above, the motion for summary judgment filed by Amanda Choate and Wexford Health Sources, Inc. (Docs. 38, 39) and the motion for summary judgment filed by Angela Walter and Melissa Ogle (Doc. 42) are **GRANTE**D. Armour's Eighth Amendment claims are **DISMISSED without prejudice**. His remaining state law claim is also **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

DATED: July 11, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**